Lennie R. Senter,

|  |  |
|---|---|
| | Civ. No. 11-3713 (RHK/FLN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |

v.

Stericycle, Inc.,

Defendant.

Lennie Senter, Urbandale, Iowa, Plaintiff pro se.

Cara J. Ottenweller, Katherine A. Christy, Steven L. Hamann, Vedder Price PC, Chicago, Illinois, Jonathon P. Norrie, Bassford Remele, PA, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this action, Plaintiff Lennie Senter asserts claims against his former employer, Defendant Stericycle, Inc. ("Stericycle"), for racial discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Stericycle moves for summary judgment on Senter's claims and, for the reasons set forth below, its Motion will be granted.

## BACKGROUND

Stericycle collects, processes, and disposes of medical waste and provides product-recall services for pharmaceutical, medical-device, and other companies. Senter, an African American, began working for Stericycle as a permanent employee in 2006 at its medical-waste-processing facility in St. Paul, Minnesota. Throughout his

employment, Senter was employed as a Plant Worker and reported to Plant Supervisor Brad Vander Pal, who in turn reported to Plant Manager Jason Ritt. As a plant worker, Senter was responsible for unloading waste from vehicles, decontaminating vehicles, and staging waste for scanning and processing. (Senter Dep. Ex. 18.)

In the spring of 2009, Stericycle asked its employees to complete surveys after viewing a presentation on unions. Senter alleges that Caucasian employees were allowed to take their surveys home to complete them, but African-American employees were required to complete them on site. (Id. at 256–57.) But Senter acknowledges that he bases this allegation of differential treatment on the fact that the Drivers, most (but not all) of whom were Caucasian, were allowed to take them home while Ritt required him (and ostensibly all the Plant Workers) to complete the surveys at work. (Id. at 260.) Senter acknowledges that the African-American Drivers would be treated the same as the Caucasian Drivers (id. at 259), although he has no personal knowledge of whether the African-American Drivers were allowed to take the surveys home as he saw only Caucasian Drivers taking them home (id. at 299–300).

In March 2010, Senter utilized the Stericycle hotline to complain about his supervisor, Vander Pal. He alleges Vander Pal regularly used profanities, often directed toward him. For example, Senter alleges Vander Pal would tell him, "Get your ass to work," that he would threaten him, saying, "Keep that shit up in here and you will be out of here," and that he chastised him, "Don't you ever f-ing do that again," after Senter spilled a bin of waste. (Id. at 66.) As a result, he reported Vander Pal to Human Resources. But when Christine Sura, the Human Resources Manager, contacted Senter to

follow up on the complaint, he informed her he had resolved the issue and he never

contacted her or Human Resources again.  (Id. at 64–65, 72.)

In October 2010, Stericycle's St. Paul plant was temporarily shut down and the

plant's employees were assigned to work at the Fridley, Minnesota, facility in the interim.

Senter was initially assigned to work as Shift Lead on a weekend shift (Shift C) at the

Fridley plant.  (Id. at 57.)  He avers this assignment was inappropriate given his seniority

(id. at 58) and all his Caucasian coworkers from St. Paul were kept on their regular

weekday shift, including Nathan Bruce and Dennis O'Brian (Senter Mem. at 2).  Senter

complained to Ritt and Vander Pal about his schedule and threatened to contact the

District Manager so they transferred him back to a weekday shift.  Their stated reason for

changing him to the weekend was that they had selected the best performers to be the

four Shift Leads.  (Compl. Ex. 1 (Doc. No. 1-1) at 25.)  In his place, they installed Joel

Hill—a Caucasian employee with only three months' experience—as the Shift Lead for

Shift C instead of Alfred Austin—an African-American employee with four years'

experience.  (Senter Mem. at 3.)  So, after transferring Senter back to the weekday shift,

the two weekend Shift Leads were Hill (Caucasian) and Martin (African American).  In

total, Senter worked two weekend shifts and suffered no loss of pay.  (Senter Dep. 59,

61.)  As a result of his initial shift assignment and the union-survey incident, Senter filed

a charge of racial discrimination and harassment against Stericycle with the City of St.

Paul in November 2010.  (Id. at 141 & Ex. 12.)

As part of his job, Senter loaded waste into and operated an "autoclave"—a large

vessel that uses high pressure and steam to kill bacteria contained in the medical waste.

On January 26, 2011, an autoclave exploded and Ritt determined that Senter was responsible for the incident; Ritt decided Senter had neglected the critical step of checking the seal of the door on the autoclave. (Ritt Aff. ¶ 25.) Senter maintains he had no part in the incident and the autoclave exploded because it had not been properly maintained. (Senter Dep. 118, 262.) Ritt confronted Senter about the incident but did not discipline him. (Id. at 117–18.) Two days later, on January 28, Senter amended his charge with the City of St. Paul to allege he "was disciplined for an act [he] did not commit." (Id. Ex. 13.)

On February 9, 2011, during Senter's shift, Vander Pal instructed him to perform a task that he believed was a safety violation. He refused to perform the task, Vander Pal started "hollering" at him, and Senter pointed his finger in Vander Pal's face, which he acknowledges was grounds for discipline. (Id. at 113, 115.) Stericycle suspended him for three days. Senter acknowledges the suspension was unrelated to his race. (Id. at 128.) He returned to work on February 14.

Two days later, on February 16, Shift Lead Nathan Bruce observed Senter picking up medical waste by hand, without using the proper safety tools. (Bruce Aff. ¶¶ 8–9.) Picking up medical waste by hand, even with gloved hands, was considered a safety risk to employees and they had been instructed not to do so. (Senter Dep. 105–06 & Ex. 9.) Senter and others had attended a safety training that addressed the topic the previous month. (Id. at 100, 138 & Ex. 8.) Bruce reported his observation to Vander Pal (Bruce Aff. ¶ 10), who reported it to Ritt (Ritt Aff. ¶ 28). Ritt reviewed the video surveillance and determined Senter had violated Stericycle's safety policies. (Id. ¶ 29.) Given his

recent suspension and this violation, he and Vander Pal decided to terminate Senter's

employment. (Id. ¶ 30.) The next morning, they informed Senter he was being

terminated for his failure to use proper safety precautions when handling medical waste.

(Senter Dep. 181–83.) Although Senter denies picking up medical waste with his hands

(id. at 137), he acknowledges that it was the reason Stericycle terminated him and that it

had nothing to do with his race (id. at 138–39.) He also acknowledges that another

employee, who is Caucasian, had been terminated for mishandling medical waste. (Id. at

212.)

In December 2011, Senter commenced the instant action. He asserts claims under

Title VII for racial discrimination, harassment, and retaliation. Stericycle now moves for

summary judgment on all of Senter's claims. The Motion has been fully briefed and is

ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the

material facts in the case are undisputed. Celotex, 477 U.S. at 322; Whisenhunt v. Sw.

Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the

inferences that may be reasonably drawn from it, in the light most favorable to the

nonmoving party. Beard v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of

London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere

allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

### I.    Harassment

To establish a claim of harassment or hostile work environment, a plaintiff must show: (1) membership in a protected group, (2) unwelcome harassment, (3) a causal nexus between the two, (4) that the harassment affected a term, condition, or privilege of her employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.  Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).  "Title VII does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace."  Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 953 (8th Cir. 2011).  "[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Senter alleges Vander Pal harassed him by using profanity and yelling at him and that he was singled out for such harassment on account of his race.  Senter's claim fails for two reasons.  First, it is doubtful that Vander Pal's conduct was sufficiently severe to constitute actionable harassment under Title VII.  The alleged comments by Vander Pal may be crude and offensive, but were not physically threatening, humiliating, or severe.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (to determine whether harassment is actionable a court considers factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"). Even assuming Vander Pal's harassment were severe or frequent enough to be actionable, Senter has not presented any evidence to support his allegation that they were racially motivated apart from the fact that Vander Pal is Caucasian and he is African American. Senter acknowledges that (1) Vander Pal has never used any racial slur or made any reference to his race, (2) his harassing comments were work-related, and (3) he used profanities with other employees. (Senter Dep. 66–68.) Under these circumstances, summary judgment will be granted.

## II.     Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; and (4) nonmembers of his class were not treated the same. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). The burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer articulates such a reason, the plaintiff must produce evidence that the employer's stated reason is merely a pretext for discrimination. Id.

While it is not clear from his Complaint or memoranda, it appears that Senter asserts he was discriminated against by having to complete the union survey at work and

by having to work the weekend shift at the Fridley plant because he acknowledged in his deposition that his termination and his suspension were not related to his race. The first two elements of Senter's prima facie case are not disputed—he is a member of a protected class and was qualified for his position. But Senter fails to establish the third element—that he suffered an adverse employment action.

"To constitute an adverse employment action, the complained of action must have an adverse impact on the employee and must effectuate a material change in the terms or conditions of employment." Jones v. Fitzgerald, 285 F.3d 705, 713 (8th Cir. 2002). Having to complete his union survey at work does not constitute an adverse employment action—he acknowledges that he was paid for the time he spent completing it and he suffered no punishment or other adverse consequences for doing so. The Court fails to see how the inability to complete it at home adversely impacted Senter. See Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1078–79 (8th Cir. 2010) (annoyances and petty slights do not amount to adverse employment actions); Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

Nor does Senter's temporary schedule change constitute an adverse employment action under Title VII. "[A] transfer or reassignment which involves only minor changes in working conditions and does not involve a reduction in pay or benefits does not constitute an adverse action." Jones, 285 F.3d at 714. Most importantly, Senter does not allege his reassignment resulted in the loss of benefits or pay or any change in responsibilities. This alone could potentially defeat his claim. See Tademe v. St. Cloud

State Univ., 328 F.3d 982, 992 (8th Cir. 2003) ("[A]n adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities.") (quotation omitted). But considering also that his new weekend shift remained a daytime shift, he was simultaneously "promoted" to Shift Lead, the new shift was intended to be temporary (while the St. Paul plant was closed), and he was transferred back to his old shift upon request, the Court concludes Senter's reassignment constituted only a minor change to the conditions of his employment and is not actionable. Cf., e.g., Montandon, 116 F.3d at 359 (plaintiff's involuntary transfer from Nebraska to Iowa was not an adverse employment action).

### III.    Retaliation

Claims of retaliation are considered under the same burden-shifting framework as discrimination claims. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the two. Muor v. U.S. Bank Nat'l Ass'n, No. 12-2757, 2013 WL 2631169, at *5 (8th Cir. June 13, 2013). Stericycle acknowledges that Senter engaged in a protected activity by filing a discrimination complaint with the City of St. Paul and that he suffered an adverse employment action when he was terminated, but it disputes whether the two were causally connected.

In order to show a causal connection, a plaintiff "must establish that his or her protected activity was a *but-for cause* of the alleged adverse action by the employer"; showing that it was merely a "motivating factor" is insufficient. Univ. of Tex. Sw. Med.

Ctr. v. Nassar, 570 U.S. __, No. 12-484, 2013 WL 3155234, at *15 (June 24, 2013) (emphasis added).  Senter has offered little evidence that his complaint was a motivating factor in his termination, let alone a but-for cause of it.  In his deposition, Senter testified there were at least four causes for his termination.  In addition to retaliation for his discrimination complaint, he believes his termination was prompted or caused by his (alleged) mishandling of medical waste (Senter Dep. 145); a complaint he made to the Minnesota OSHA[1] about Stericycle (id. at 139); and his superior performance on the job, which he claims Vander Pal found threatening (id. at 229).  The sheer number of causes that Senter alleges makes his claim look more like one of "mixed motives," which the Supreme Court explicitly rejected in Nassar, and undercuts the likelihood that he would not have been terminated "but for" his discrimination complaint.

Regardless, Senter presents virtually no facts supporting causation.  When asked in his deposition why he believes he was terminated in retaliation for his complaint, he pointed to the facts that (1) he was fired the day *after* the alleged safety violation (id. at 180–81) not on the day *of* it and (2) Stericycle contested his receipt of unemployment benefits after he was terminated (id. at 193), ostensibly demonstrating a vindictive intent. But even drawing all reasonable inferences in his favor, these facts, standing alone, do not establish a prima facie case of causation, especially given his acknowledgment that the complaint was not mentioned during his termination and the lack of any evidence to indicate his supervisors were even *aware* he had filed a complaint.  Not even the timing

---

[1] Although Senter asserts his complaint to the Minnesota OSHA was a cause of his termination, he acknowledges that allegations of such retaliation are outside the scope of his Complaint. (Senter Dep. 140.)

of his termination supports his claim. While it may be viewed as suspect that no one

confronted Senter about his safety violation the day it (allegedly) happened, the fact

remains that he was terminated *less than a day* after the alleged violation and *within a*

*week* of his suspension for insubordination, but *more than two months* after filing his

complaint with the City of St. Paul.

Even if Senter had established a prima facie case of retaliation, he has presented

no evidence that Stericycle's proffered reason for his termination—namely his safety

violation on the heels of insubordinate behavior—was merely pretextual. Senter argues

this this is a pretext because it is not true—that is, he denies committing the violation.

But "the critical inquiry . . . is not whether the employee actually engaged in the conduct

for which he was terminated, but whether the employer in good faith believed that the

employee was guilty of the conduct." Pulczinski v. Trinity Structural Towers, Inc., 691

F.3d 996, 1002 (8th Cir. 2012). Stericycle has presented evidence of Ritt's and Vander

Pal's good-faith belief, which Senter has not rebutted. Namely, Nathan Bruce, the Lead

for Senter's shift, states in his affidavit that he *told* Vander Pal Senter had violated safety

protocol, and Vander Pal, in turn, informed Ritt. Furthermore, Senter acknowledges that

the alleged violation—picking up waste without the proper equipment—is a terminable

offense at Stericycle and that at least two other Plant Workers have been discharged for

that reason. Because Senter has not offered adequate evidence of causation or pretext in

support of his retaliation claim, Stericycle is entitled to summary judgment.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that Stericycle's Motion for Summary Judgment (Doc. No. 90) is

**GRANTED** and the Complaint (Doc. No. 1) is **DIMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  October 22, 2013

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge